IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

BILLY PRESTON AMBROSE, JR.    )
    )
v.    )    No. 2:18-0058
    )
ANDREW M. SAUL    )
    Commissioner of Social Security[1]    )

**To:    The Honorable Waverly D. Crenshaw, Chief District Judge**

**R E P O R T   A N D   R E C O M M E N D A T I O N**

Plaintiff filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of the final decision of the Social Security Administration ("Commissioner") denying Plaintiff's claim for period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") as provided under Titles II and XVI of the Social Security Act ("the Act"). The case is currently pending on Plaintiff's motion for judgment on the administrative record (*See* Docket Entry ("DE") 13), to which Defendant has filed a response. *See* DE 15. Plaintiff has also filed a subsequent reply to Defendant's response. *See* DE 16. This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for initial consideration and a report and recommendation. *See* DE 4.

Upon review of the administrative record as a whole and consideration of the parties' filings, the undersigned Magistrate Judge respectfully recommends that Plaintiff's motion (DE 13) be **DENIED**.

---

[1] Andrew M. Saul has been appointed as Commissioner of the Social Security Administration. He is therefore automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

# I. INTRODUCTION

Plaintiff filed an application for SSI on March 4, 2014 and a subsequent application for a period of disability and DIB on April 4, 2014. *See* Transcript of the Administrative Record (DE 8) at 17, 62.[2] He alleged a disability onset date of February 28, 2014. AR 17, 63. Plaintiff asserted that he was unable to work because of a nervous disorder, learning problems, blindness, and dizziness. AR 86.

Plaintiff's applications were denied initially and upon reconsideration. AR 17, 62, 77. Pursuant to his request for a hearing before an administrative law judge ("ALJ"), Plaintiff appeared with counsel and testified at a hearing before ALJ Shannon H. Heath on December 13, 2016. AR 38. The ALJ denied the claim on August 3, 2017. AR 14-16. The Appeals Council denied Plaintiff's request for review of the ALJ's decision on May 10, 2018 (AR 1-3), thereby making the ALJ's decision the final decision of the Commissioner. This civil action was thereafter timely filed and the Court has jurisdiction. 42 U.S.C. § 405(g).

# II. THE ALJ FINDINGS

The ALJ issued an unfavorable decision and made the following enumerated findings based upon the record:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2020.

2. The claimant has not engaged in substantial gainful activity since October 1, 2015, the alleged onset date. (20 CFR 404.1571 *et seq.,* and 416.971 *et seq.*).

3. The claimant has the following severe impairments: bipolar disorder; generalized anxiety disorder; migraine headaches; vertigo; and anisohyperopic amblyopia and esotropia, status post eye surgery (20 CFR 404.1520(c) and 416.920(c)).

---

[2] The Transcript of the Administrative Record is referenced by the abbreviation "AR" followed by the corresponding page number(s) as numbered in the large black Bates stamps on the bottom right corner of each page.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant should not climb ladders, ropes, or scaffolds, or work around unprotected heights and moving machinery. He can understand, remember, and carry out simple and detailed tasks, but not complex tasks. The claimant can maintain concentration, persistence and pace for same tasks with normal breaks spread throughout the day. He can interact with the public occasionally and with supervisors and coworkers appropriately. Additionally, the claimant can adapt to routine changes in the workplace.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on March 21, 1978 and was 37 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from October 1, 2015, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

AR 20-31.

## III. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## IV. DISCUSSION AND CONCLUSIONS OF LAW

### A. Standard of Review

The determination of disability under the Act is an administrative decision. The only questions before this Court upon judicial review are: (i) whether the decision of the Commissioner is supported by substantial evidence, and (ii) whether the Commissioner made legal errors in the process of reaching the decision. 42 U.S.C. § 405(g). Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). If substantial evidence supports the ALJ's decision, that decision must be affirmed "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). In other words:

> The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm.

*Felisky v. Bowen,* 35 F.3d 1027, 1035 (6th Cir. 1994).

The Commissioner utilizes a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a). If the issue of disability can be resolved at any point during the evaluation, the ALJ does not proceed to the next step and the claim

is not reviewed further. *Id.* §§ 404.1520(a)(4), 416.920(a)(4). At step one, the claimant must show that he is not engaged in "substantial gainful activity" at the time disability benefits are sought; at step two, the ALJ considers whether one or more of the claimant's alleged impairments are "severe" in nature; at step three, the ALJ determines whether the impairments at issue meet or equal one of the Listings contained in the regulatory List of Impairments; at step four, the ALJ considers the claimant's residual functional capacity ("RFC") and determines whether the claimant can still perform past relevant work; at step five, the burden of proof shifts to the ALJ to assess whether the claimant, after establishing that past relevant work is no longer possible, is capable of performing other types of work. *Id.* §§ 404.1520(a)(4), 416.920(a)(4).

If the ALJ determines at step four that the claimant can perform past relevant work, the claimant is "not disabled" and the ALJ need not complete the remaining steps of the sequential analysis. *Id.* §§ 404.1520(a)(iv), 416.920(a)(iv). "Past relevant work" is defined as "substantial gainful activity" that a claimant has done within the past 15 years and that lasted long enough for the claimant to learn to do it. *Id.* §§ 404.1560(b)(1), 416.960(b)(1). If the claimant is unable to perform past relevant work, however, the ALJ proceeds to step five to determine whether, in light of the claimant's RFC, age, education, and work experience, the claimant can perform other substantial gainful employment and whether such employment exists in significant numbers in the national economy. *Id.* §§ 404.1520(a)(v), 416.920(a)(v). In evaluating a claimant's RFC, the ALJ must consider the combined effect of all of the claimant's impairments, mental and physical, severe and nonsevere. *See* 42 U.S.C. §§ 423(d)(2)(B), (5)(B).

The Court's review of the Commissioner's decision is limited to the record made during the administrative hearing process. *Willbanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988). A reviewing court is not permitted to try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)

(*Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court is required to accept the ALJ's explicit findings and ultimate determination unless the record as a whole is without substantial evidence to support the ALJ's determination. *Houston v. Sec'y of Health & Human Servs*., 736 F.2d 365, 366 (6th Cir. 1984) (citing 42 U.S.C. § 405(g)).

### B. The ALJ's Five -Step Evaluation of Plaintiff

In the instant case, the ALJ resolved the Plaintiff's claim at step five of the five-step process. The ALJ found that Plaintiff met the first two steps, but found at step three that Plaintiff was not presumptively disabled because he did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. At step five, the ALJ found that Plaintiff's RFC allowed him to perform work with express limitations to account for his severe impairments, and that considering his age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. AR 20-31.

### C. Plaintiff's Assertions of Error

Plaintiff argues that the ALJ committed five acts of reversible error: (1) improper RFC formulation; (2) failure to properly consider the combined effect of Plaintiff's alleged impairments; (3) improper reliance on the Medical-Vocational Guidelines ("the Grids"); (4) improper rejection of the treating physician's opinion; and (5) failure to order a psychological consultative examination. DE 14-1 at 3-4. Plaintiff therefore requests that this case be reversed and benefits awarded, or, alternatively, remanded pursuant to sentence four of 42 U.S.C. § 405(g) for an additional hearing before an ALJ. *Id*. at 26.

Sentence four of 42 U.S.C. § 405(g) states the following:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3). "In cases where there is an adequate record, the [Commissioner's] decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a claimant's entitlement to benefits. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). The Court addresses Plaintiff's assertions of error below.

**1. RFC.**

Plaintiff's initial assertion of error is mainly a verbatim recitation of regulations and numerous excerpts from the administrative hearing. DE 14-1 at 4-10. Plaintiff eventually cites the following paragraph from the administrative opinion as evidence that the ALJ mischaracterized the record to support the RFC formulation:

> [T]he claimant's Function Reports show he is able to go out alone, mow [his] lawn, prepare complete meals, perform household cleaning activities, shop in stores, manage finances, play basketball with his daughters, and that he does not use any type of assistive device other than prescription glasses.

AR 28. Plaintiff apparently finds fault with the ALJ's reference to his ability to mow his yard despite the fact that, as discussed by the ALJ, one of the two function reports he completed as part of the application for benefits clearly indicates that he is able to "mow yard, clean around the house." AR 28, 238. The ensuing question in the same functional report prompts Plaintiff to describe the amount of time it takes to complete these tasks, to which he responds: "try to clean

house every day." AR 238. The next question asks Plaintiff whether he "need[ed] help or encouragement doing these things," to which he responds, without specification: "my daughters help." AR 238. Plaintiff appears to argue that this latter response made it improper for the ALJ to conclude that Plaintiff can mow his yard because his daughters help him with this activity even though the function report does not explicitly indicate that as the case. Nor does Plaintiff explain his answer to the exact same question in a subsequent function report in which he states that he does *not* need help performing household chores or yard work. AR 253.

Plaintiff continues his efforts to deconstruct the ALJ's opinion by quoting other portions of one of the function reports, including a section in which he indicates that he is able to "pay bills," "count change," and "handle a savings account," but notes that he does not understand how to use a checking account or write checks. AR 239. Plaintiff suggests, again implicitly, that this evidence demonstrates that the ALJ mischaracterized his ability to manage his finances, despite the fact that the ALJ specifically referenced Plaintiff's purported difficulties with writing checks in the opinion before highlighting Plaintiff's later claim that he *can* manage a checkbook. AR 21-22. Plaintiff's tepid argument is further undermined by his own response to the very next question in the function report in which he claims that his ability to manage his finances since the alleged onset of his disability *has not changed*. AR 240. Even more confounding is his unequivocal claim in the subsequent function report that he *does* know how to use a checkbook. AR 254.

Plaintiff next argues that the ALJ erred by noting that he is able to play basketball with his daughters, a finding that seems reasonable given that his first function report unambiguously states that he is able to "play basketball [with] kids." AR 240. Plaintiff later states that he "get[s] sick if [he] play[s] ball too much" (AR 240), but this statement does not contradict the ALJ's finding that Plaintiff is able to play basketball with his daughters. Plaintiff finally cites other portions of the

first function report regarding his ability to walk and hear (DE 14-1 at 10), although he fails to explain in any meaningful way how these answers are incongruent with the ALJ's summary. Such rote recitation of evidence does little to advance Plaintiff's arguments. *See Peterson v. Comm'r of Soc. Sec.*, 552 F. App'x 533, 540 (6th Cir. 2014) ("Merely marshalling evidence to suggest that [the claimant] is disabled ... is insufficient[.]").

Plaintiff contends that the ALJ's mischaracterization of the function report is "obvious" (DE 14-1 at 10), although the only obvious conclusion to be drawn from Plaintiff's argument is that he failed to read the full text of either the ALJ's opinion or his own answers to the multiple function reports. Plaintiff's misguided attempt to parse the ALJ's opinion is without merit and therefore rejected.

**2. Plaintiff's Allegations of Disabling Pain.**

Plaintiff next argues that the ALJ failed to properly consider his allegations of disabling pain. When a claimant alleges the existence of disabling symptoms, the ALJ is required to examine whether medical evidence supports a finding of an underlying medical condition and, if so, determine whether the condition is of such a severity that it could reasonably be expected to produce the alleged symptoms. *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986). If such claims are not substantiated by medical evidence, the ALJ is required to evaluate the consistency of the claimant's allegations based on the record. Social Security Ruling ("SSR") 16-3p, 2016 WL 1119029, at *2 (March 16, 2016).[3] An ALJ's conclusions regarding a

---

[3] This determination was formerly known as a "credibility" finding. SSR 96-7p, 1996 WL 374186 (July 2, 1996). However, SSR 16-3p, which replaced SSR 96-7p and was in effect at the time of the administrative hearing, removes the term "credibility" and directs the ALJ to consider a claimant's "statements about the intensity, persistence, and limiting effects of the symptoms," and "evaluate whether the statements are consistent with objective medical evidence and other evidence." 2016 WL 1119029, at *6. Nevertheless, there is no substantive difference between the two rulings as case law pertaining to "credibility" assessments remains applicable. *See Pettigrew v. Berryhill*, No. 1:17-cv-1118, 2018 WL 3104229, at *14, n.14 (N.D. Ohio June 4, 2018), *report*

claimant's allegations of disabling pain may not be disturbed by the courts "absent compelling reason." *See Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001) (citing *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 780 (6th Cir. 1987)).

Plaintiff states that "[t]here was and is very clear and objective evidence in the record to support [his] allegations of pain and his impairments and limitations" (DE 14-1 at 13), although such evidence fails to materialize anywhere in Plaintiff's brief. Plaintiff instead relies on a letter from Haven of Hope Counseling that allegedly shows an IQ composite score of 50 obtained more than one month after the administrative hearing (AR 12-13), although it is unclear how such evidence relates to whether Plaintiff's allegations of disabling pain are credible. More importantly, even the legitimacy of this IQ score is assumed, such evidence was submitted to the Appeals Council well after the ALJ's opinion was issued, which prevents the Court from considering it. *See Curler v. Comm'r of Soc. Sec.*, 561 F. App'x 464, 472-73 (6th Cir. 2014) ("We have repeatedly refused to consider evidence submitted after the ALJ issued his decision when reviewing that decision for substantial evidence under 42 U.S.C. § 405(g)) (citing *Foster v. Halter,* 279 F.3d 348, 357 (6th Cir. 2001)). There is an exception to this rule, which is contained in sentence six of 42 U.S.C. § 405(g),[4] yet Plaintiff fails to introduce any argument pursuant to this provision, thus waiving any consideration of its potential merit. *See Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006) ("[W]e decline to formulate arguments on [the claimant's]

---

*and recommendation adopted*, 2018 WL 3093696 (N.D. Ohio June 22, 2018) ("[The Court] declines to engage in verbal gymnastics to avoid the term credibility where usage of the term is most logical. Furthermore, there is no indication that the voluminous case law discussing and applying the credibility or symptom analysis governed by SSR 96-7p has been invalidated by SSR 16-3p.")

[4] "The court may ... at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."

behalf, or to undertake an open-ended review of the entirety of the administrative record[.]"). Plaintiff's insertion of the cursory statement that such evidence "is new and did not exist at the time of the hearing" into her reply brief, after being alerted to the issue by Defendant's response, does not change this outcome, *see Golden Living Center-Frankfort v. Sec'y of Health & Human Servs.*, 656 F.3d 421, 429 (6th Cir. 2011) (arguments raised for the first time in a reply brief are waived)), nor does it provide good cause for failing to procure the report before the administrative hearing. *See Henderson v. Colvin*, No. 2:13-cv-0042, 2016 WL 331251, at *6 (M.D. Tenn. Jan. 7, 2016), *report and recommendation adopted*, 2016 WL 324577 (M.D. Tenn. Jan. 26, 2016) ("Although the records submitted by Plaintiff are undoubtedly material ... Plaintiff has not provided good cause for failing to present such evidence before or during [her] hearing with the ALJ.")

The only other argument proffered by Plaintiff involves a conclusory letter written by Dr. Jesse Kellum on January 26, 2016, which is cited as evidence that Plaintiff "is unable to work." DE 14-1 at 14.[5] The letter itself is notable primarily for its brevity:

> This is a letter regarding William Ambrose who I have been following for vertigo and migraine. He complains of fairly consistent vertigo. Because of this, he is unable to work.

AR 485. Aside from the fact that an ALJ "is not bound by a physician's conclusory opinion that a claimant is unable to work," *Harley v. Comm'r of Soc. Sec.*, 485 F. App'x 802, 803-04 (6th Cir. 2012), the ALJ discussed in detail her reasons for rejecting this opinion, including her finding that the conclusion appears to be "based on the claimant's complaints rather than Dr. Kellum's objective findings." AR 28. The Sixth Circuit has made clear that rejection of such a biased opinion

---

[5] The Court must necessarily assume this is the letter referenced by Plaintiff in light of his failure to provide a citation to the precise page in the administrative record on which the letter appears.

is appropriate. *See Staymate v. Comm'r of Soc. Sec.*, 681 F. App'x 462, 467 (6th Cir. 2017) (affirming ALJ's decision to discount a medical opinion that "relie[d] too heavily on the claimant's subjective complaints"). Therefore, to the extent that Plaintiff contends that the ALJ improperly discounted Dr. Kellum's opinion, such an argument is rejected.

An ALJ's findings regarding the consistency of a claimant's allegations "are entitled to deference[] because of the ALJ's unique opportunity to observe the claimant and judge [his] subjective complaints." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). Plaintiff attempts to overcome this standard by faulting the ALJ's failure to consider evidence that did not exist at the time of the ALJ's decision, an argument that struggles to gain any logical traction, and the ALJ's refusal to accept a provider's conclusory and unsupported opinion that Plaintiff is unable to work due to "vertigo and migraine," which would flout one of the core tenets of the disability evaluation. *See Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014) ("[D]isability is determined by the functional limitations imposed by a condition, not the mere diagnosis of it."); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis of [an impairment], of course, says nothing about the severity of the condition."). The Court thus finds that substantial evidence supports the ALJ's assessment of Plaintiff's subjective allegations and rejects this assertion of error.

### 3. The Medical-Vocational Guidelines.

Plaintiff asserts that the ALJ erred by relying on "the grids" to find that he was not disabled since he suffers from "nonexertional impairments." DE 14-1 at 14-15. Plaintiff's argument is unpersuasive for numerous reasons.

First, Plaintiff fails to explain what "the grids" are, let alone how the ALJ erroneously relied on them. The regulations permit the Commissioner to carry his burden at the fifth step of

the evaluation process by relying on the Medical-Vocational Guidelines contained in 20 C.F.R. § 404, Subpart P, Appendix 2 (sometimes referred to as "the grids"), but only if a nonexertional impairment does not significantly limit the claimant, and additionally only when the claimant's RFC and vocational factors precisely match the criteria of the applicable grid rule. *Anderson v. Comm'r of Soc. Sec.*, 406 F. App'x 32, 35 (6th Cir. 2010); *Wright v. Massanari*, 321 F.3d 611, 615-16 (6th Cir. 2003). Otherwise, the grids function only as a guide to the disability determination. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

Second, Plaintiff misapprehends the difference between relying on the grids to determine whether a claimant is disabled based on exertional limitations, which the ALJ did not do, and using the grids as a guide when the claimant suffers exclusively from nonexertional limitations, which is what the ALJ appropriately did. *See Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 424 (6th Cir. 2008) ("[W]here a claimant has nonexertional impairments alone or in combination with exertional limitations, the ALJ must treat the grids as only a framework for decisionmaking[.]"). The ALJ explained this very process in her opinion, including her conclusion that, based on the vocational expert's testimony regarding the availability of jobs in the national economy despite Plaintiff's limitations, a finding of non-disability was "appropriate *under the framework* of section 204.00 in the Medical-Vocational Guidelines." AR 30 (emphasis added). None of the three Sixth Circuit cases cited by Plaintiff hold that such action is improper.[6]

Finally, Plaintiff appears to conflate the nonexertional limitations included in the RFC with the severe impairments identified by the ALJ in the administrative opinion. *See* DE 14-1 at 14; AR 20, 24. Analysis of the former takes places as part of the RFC assessment at step four the

---

[6] Notably, only one of the three cases listed in Plaintiff's brief contains a citation that corresponds to the referenced case. DE 14-1 at 15.

evaluation, while the latter is considered at step two of the process. *See* 20 C.F.R. § 404.1520(4)(ii), (iv). Here, the ALJ explicitly identified "migraine headaches" and "vertigo" as severe impairments at step two before assigning nonexertional limitations at step four. AR 20, 24. Plaintiff nevertheless claims that the ALJ "failed to take into consideration" his chronic migraines and alleged dizziness (DE 14-1 at 14), which is baseless given the ALJ's extensive discussion of these impairments and their impact on Plaintiff's RFC. AR 21-22, 26-28. For all these reasons, Plaintiff's argument is rejected.

**4. Treating Physician Rule.**

Plaintiff asserts that the ALJ erred by failing to grant controlling weight to the opinion provided by her treating physician, Dr. Jack Rhody. DE 14-1 at 16. Under the "treating physician rule," the ALJ is required to accord controlling weight to the opinion of a treating physician if that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2).[7] If the opinion is not given controlling weight, the ALJ must determine the amount of weight to accord it based on a variety of factors that include the length, frequency, nature, and extent of the treatment relationship, as well as the degree to which the opinion is consistent with the record as a whole. *Gayheart v. Comm'r of Soc. Sec.,* 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)). The ALJ is required to provide "good reasons" that are "sufficiently specific to make clear to any subsequent reviewers" the basis for such weight allocation. *Johnson-Hunt v. Comm'r of Soc. Sec.*, 500 F. App'x 411, 418 (6th Cir. 2012) (quoting *Helm v. Comm'r of Soc. Sec.,* 405 F. App'x 997, 1000 (6th Cir. 2011)).

---

[7] This provision applies to all Social Security claims filed before March 27, 2017, such as the current one. *See* 82 Fed. Reg. 15263-01, 2017 WL 1105348 (Mar. 27, 2017).

Dr. Rhody's opinion comes in the form of a "medical assessment of ability to do work-related activities (physical)," which he completed on December 6, 2016. AR 873-78. The assessment states that Plaintiff's physical condition limits him to, during an eight-hour workday, lifting and carrying no more than 10 pounds occasionally, lifting and carrying less than 10 pounds frequently, standing and walking less than two hours, and sitting for four hours. AR 873-74.[8] Dr. Rhody also opines that Plaintiff is unable to tolerate "low stress jobs" or work for more than 30 minutes without a break, and that he would be forced to miss more than four days of work per month due to his alleged impairments. AR 877. The ALJ accorded this assessment "little weight" based on its inconsistency with Dr. Rhody's own office notes and that the opinion appears to have been based on Plaintiff's own subjective complaints instead of objective medical findings. AR 28-29.

Plaintiff relies on SSR 96-2p in support of his argument (DE 14-1 at 16-19), which involves a more detailed explanation of the policy behind the treating physician rule.[9] As noted in Plaintiff's brief, this ruling reiterates that an ALJ must accord controlling weight to the opinion of a treating physician if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." SSR 96-2p, 1996 WL 374188, at *1 (July 2, 1996). However, to prevail on appeal, Plaintiff must do more than regurgitate the standards to which the ALJ is held when reviewing a claim for benefits; he is required to "demonstrate that the ALJ's determination ... is not supported by substantial evidence." *Peterson*, 552 F. App'x at 540.

---

[8] "Occasionally" is defined as "from very little up to 1/3 of an 8-hour workday," while "frequently" is defined as "from 1/3 to 2/3 of an 8-hour workday." AR 873-74.

[9] Like 20 C.F.R. § 404.1527(c)(2), SSR 96-2p was rescinded on March 27, 2017 but remains applicable to the instant matter.

Bearing this in mind, the Court finds Plaintiff's argument to be woefully deficient. Instead of pointing to evidence establishing the medical evidence that purportedly supports Dr. Rhody's conclusions, Plaintiff states merely that the opinion is "'well-supported' by 'medically acceptable' clinical and laboratory diagnostic techniques, as referenced under [assertion of error] no. 2." DE 14-1 at 19. The Court thus returns to Plaintiff's discussion of his symptoms in his second assertion of error, which consists entirely of the following:

> [P]laintiff's migraine headaches, weakness, dizziness/vertigo, and the problems with his eyes, pituitary gland, back, his mental conditions, etc. are well documented. His neurologist, Dr. Kellum, wrote a letter that is included in Exhibit 12F ... stating that because of claimant's vertigo and migraines he is unable to work. Counsel realizes that whether or not plaintiff is able to work is reserved to the commissioner, but this letter supports plaintiff's claim for disability.

DE 14-1 at 14. The problem with such a generalized claim is that it does nothing to demonstrate the severity of the alleged conditions, which is the critical issue in any disability determination. *See Hill, supra*. Moreover, the record contains just three documented visits between Plaintiff and Dr. Rhody, none of which documents any significant functional limitations. On June 13, 2016, Dr. Rhody diagnosed Plaintiff with an "unspecified disorder of vestibular function," yet noted that Plaintiff had "no physical disability," no abnormal findings, and no problems with activities of daily living. AR 561-62. One month later, Dr. Rhody assessed Plaintiff with "major depressive disorder, recurrent, mild," but again recorded no physical disability and normal activities of daily living, as well as a normal gait and stance despite Plaintiff's complaints of "problems walking." AR 559-60. During the last interaction on August 2, 2016, Dr. Rhody diagnosed Plaintiff with "moderate" MDD, but again noted no functional deficits and normal activities of daily living. AR 557-58.

Office notes documenting Plaintiff's earlier treatment with Dr. Rhody's partner, Dr. Doug Hooper, reveal similarly minimal findings that include no functional problems and normal

activities of daily living. AR 579, 586, 589, 597, 599, 605. On April 23, 2015, Dr. Hooper diagnosed Plaintiff with benign paroxysmal positional vertigo (AR 597-98), which is defined as "brief periods of positional vertigo ... occurring when the head is placed in certain positions such as with one ear down." Elsevier Saunders *Dorland's Illustrated Medical Dictionary* 2051 (32nd ed. 2012). Plaintiff made no complaints of vertigo during a subsequent office visit in August of 2015, at which time Dr. Hooper diagnosed him with "anxiety disorder [not otherwise specified]" and encouraged him to lose weight. AR 586-87. The Court also highlights Plaintiff's final examination by Dr. Hooper in February of 2016, during which Plaintiff was "able to walk around [the] room without problems ... no signs of vertigo or balance issues at this time." AR 579-80.

Plaintiff cites no findings to support the severity of the limitations contained in Dr. Rhody's opinion, nor is the Court able to independently identify any such evidence. Plaintiff's reliance on Dr. Kellum's January 2016 letter is unavailing, as discussed *supra*, particularly in light of the findings from his very next examination of Plaintiff: "Cranial nerves ... were tested and found to be intact. Motor examination revealed normal strength and tone throughout. Gait was normal ... [Plaintiff] is doing very well and is satisfied with his progress at this time." AR 482. Plaintiff also fails to address the ALJ's finding that Dr. Rhody's opinion relied on Plaintiff's reports of disabling symptoms instead of objective medical findings, which was not improper. *See Young v. Sec'y of Health & Human Servs.,* 925 F.2d 146, 151 (6th Cir. 1990) (opinion that simply repeats a claimant's allegations is not well-supported). The Court therefore finds that substantial evidence supports the ALJ's decision to discount Dr. Rhody's opinion and rejects Plaintiff's assertion of error.

**5. Mental Functioning.**

Plaintiff's final assertion of error involves the ALJ's evaluation of his alleged mental impairments. He argues that the ALJ erred in three ways: (1) by noting that Plaintiff's application for benefits did not allege disability based on any mental impairments; (2) by failing to obtain a consultative examination of Plaintiff; and (3) by failing to find that Plaintiff's symptoms correspond to the requirements of Listings 12.04, 12.05, or 12.06. DE 14-1 at 20-25. For the following reasons, none of these arguments have merit.

First, the ALJ did not err by correctly noting that Plaintiff denied the existence of any mental conditions in response to direct prompts for such information on his application for benefits. AR 219. It is not the role of the adjudicator to investigate every possible claim that could be pursued by a claimant. *See Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 577 (6th Cir. 2009) ("Given [claimant's] failure to list obesity in his application and the scant evidence of obesity in the record, the ALJ properly evaluated this alleged condition."). More importantly, however, the ALJ clearly evaluated the severity of Plaintiff's alleged mental limitations and ultimately determined that Plaintiff in fact suffered from multiple "severe" mental impairments (AR 20-24), which means that any error at step two of the evaluation is rendered harmless. *See English v. Astrue*, No. 1:07-101, 2008 WL 782443, at *5 (W.D. Ky. Mar. 21, 2008) ("[A]n ALJ's failure to identify an impairment as a 'severe' impairment ... is deemed to be a harmless error if the ALJ acknowledged the existence of at least one 'severe' impairment and adequately considered the limitations resulting from all impairments at subsequent steps.") (citing *Maziarz v. Sec'y of Health & Human Servs.,* 837 F.2d 240 (6th Cir. 1987)).

Second, Plaintiff fails to meaningfully explain how the ALJ committed reversible error by failing to procure a consultative examination, which is significant given that this decision is within

the ALJ's purview. *See* 20 C.F.R. §§ 404.1517, 416.917 ("If your medical sources cannot or will not give us sufficient medical evidence about your impairment for us to determine whether you are disabled or blind, we *may* ask you to have one or more physical or mental examinations or tests.") (emphasis added). *See also Foster,* 279 F.3d at 355 ("An ALJ has discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary."). Plaintiff instead asserts baldly that the ALJ "erred in not seeking a psychological examination ... especially after all the mental health records were filed" (DE 14-1 at 21), which both ignores the ALJ's detailed discussion of the mental health records in question (AR 22-23) and fails to set forth any grounds for finding that the ALJ's failure to obtain a consultative examiner's opinion represents reversible error. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) ("[T]he regulations do not require an ALJ to refer a claimant to a consultative specialist, but simply grant [her] the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination.").

Similarly, Plaintiff fails to discuss how his alleged mental limitations correspond to any of the criteria contained in the listed impairments. In fact, Plaintiff fails to discuss what these listed impairments actually are or how they pertain to a disability determination. For reference, the Listing of Impairments contained in 20 CFR Part 404, Subpart P, Appendix 1 "describe[] impairments the SSA considers to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 653 (6th Cir. 2009) (internal quotations omitted). Since satisfying the criteria in one of these listed impairments "yields an automatic determination of disability ... the evidentiary standards [at Step Three] ... are more strenuous than for claims that proceed through the entire five-step evaluation," *Peterson*, 552 F. App'x at 539 (6th Cir. 2014), with the claimant

bearing the burden of proving that he meets or equals all of the criteria of a listed impairment. *Evans v. Sec'y of Health & Human Servs.*, 820 F.2d 161, 164 (6th Cir. 1987).

Here, Plaintiff simply recites the criteria corresponding to Listings 12.04, 12.05, and 12.06 before noting that he received a special education diploma as part of his high school curriculum. DE 14-1 at 21-25; AR 298. According to Plaintiff, this diploma "supports the fact that his intellectual disorder began before age 22" (DE 14-1 at 25), a consideration that applies only to Listing 12.05's discussion of intellectual disability.[10] The Court first notes that the Sixth Circuit has clearly indicated that participation in special education classes is insufficient to demonstrate the onset of intellectual deficits prior to reaching age 22, even when a diploma has *not* been achieved. *See, e.g., Eddy v. Comm'r of Soc. Sec.,* 506 F. App'x 508, 510 (6th Cir. 2012) (a claimant's eighth grade education with a history of special education classes did not establish deficits in adaptive functioning prior to age twenty-two); *Foster,* 279 F.3d at 352-55 (a claimant's ninth-grade education completed through special education classes, followed by numerous unsuccessful attempts at a GED, did not establish adaptive functioning deficits prior to age twenty-two). Indeed, the Sixth Circuit "has never held that poor academic performance, in and of itself, is sufficient to warrant a finding of onset of subaverage intellectual functioning before age twenty-two." *Hayes v. Comm'r of Soc. Sec.,* 357 F. App'x 672, 676-77 (6th Cir. 2009).

The only other evidence cited by Plaintiff involves the purported IQ testing that took place well after the ALJ issued her decision, which, as previously discussed, renders such evidence irrelevant in considering whether the ALJ's decision is supported by substantial evidence. *See Curler, supra*. Plaintiff's argument therefore falls far short of establishing satisfaction of all of the criteria required of any particular listing. *See Smith-Johnson v. Comm'r of Soc. Sec.,* 579 F. App'x

---

[10] The Court refers to the version of Listing 12.05 that was in effect at the time of Plaintiff's application in March and April of 2014.

426, 432-33 (6th Cir. 2014) (if a claimant does not "point to specific evidence that demonstrates he reasonably could meet or equal every requirement of [a] listing," then "the ALJ does not commit reversible error by failing to evaluate a listing at Step Three"). This assertion of error is therefore rejected.

## V. RECOMMENDATION

For the above stated reasons, it is recommended that Plaintiff's motion for judgment on the administrative record (DE 13) be DENIED and the Commissioner's decision be AFFIRMED.

ANY OBJECTIONS to this Report and Recommendation must be filed within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. Fed. R. Civ. P. 72(b)(2). Failure to file specific written objections within the specified time can be deemed to represent a waiver of the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *Cowherd v. Milton*, 380 F.3d 909, 912 (6th Cir. 2004) (*en banc*). Any responses to objections to this Report and Recommendation must be filed within fourteen (14) days of the filing of the objections. *Id.*; M.D. Tenn. R. 72.01(b).


Respectfully submitted,


BARBARA D. HOLMES
United States Magistrate Judge